Abraham Kaufman v. Commissioner. Max Bedrick v. Commissioner.
Kaufman v. Commissioner
Docket Nos. 50316, 50317.
United States Tax Court
T.C. Memo 1955-213; 1955 Tax Ct. Memo LEXIS 127; 14 T.C.M. (CCH) 846; T.C.M. (RIA) 55213; July 27, 1955
Arthur Pick, Esq., 331 Madison Avenue, New York, N. Y., for the petitioners. S. Jarvin Levison, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for 1947 of $7,662.27 against Kaufman and $7,208.55 against Bedrick. The only issue for decision is whether the principal amount of 23 notes received by each petitioner in May 1947, but payable after 1947, represented income taxable to the petitioners in 1947. Findings of Fact The petitioners filed individual returns for 1947 with the collector of internal revenue for the third district of New York on a cash basis. The petitioners owned all of the stock of Kaufman-Bedrick Pharmacy, Inc., here-after called Pharmacy. The petitioners, Pharmacy *128 and Jack H. Janus entered into an agreement dated April 30, 1947, whereby Janus purchased the stock of Pharmacy from the petitioners and the latter agreed not to compete for nine years. The consideration for the agreement not to compete was $30,000 evidenced by 30 notes to each petitioner secured by a chattel mortgage on the pharmacy. The notes were dated in May 1947, were for $500 each and bore interest at 4 1/2 per cent. One series designated A was to be given to one petitioner and the other, Series B, was to be given to the other petitioner. Notes A1 and B1 were to become due and payable one month after closing of the agreement, and thereafter one note in each series was to become due monthly. The petitioners agreed not to negotiate for the sale of the Series A and B notes for a period of 18 months from the date of the closing under the agreement, agreed to place notes 1A to 7A and 1B to 7B in escrow until January 5, 1948 to secure the purchaser against loss from specified contingencies and agreed to place in escrow until due the notes numbered 10, 11, 16, 22, 28 and 34 in each series. The closing date was to be May 1, 1947. The agreement is incorporated herein by this reference. *129 The notes were paid as they came due. The petitioners did not report any income on their 1947 returns from the notes received for their agreement not to compete. The last 23 notes in Series A and B were not negotiable during 1947 and had no fair market value in that year. The record does not show what the Commissioner did in determining the deficiencies. Opinion MURDOCK, Judge: There is some confusion in this case and the fault lies with counsel for the petitioners who failed to attach a full copy of the notice of deficiency to the petitions and failed to prove all of the facts to which he refers in his brief. However, the parties seem to agree that the only issue for decision is whether the face amount of 23 notes received by each petitioner in 1947 represents taxable income in that year. The Commissioner states that he has so held under section 111(b). That section does not apply to the petitioners' agreement not to compete. The question is whether the 23 notes were the equivalent of cash when received by cash basis taxpayers. The Commissioner's argument is that they were negotiable but obviously they were not. Six of the last 23 notes in each series were required to be *130 placed in escrow until they matured and could not have been negotiated. The agreement prohibited the petitioners from negotiating any of the notes for 18 months. The record as a whole shows that none of the notes involved in this issue was negotiable in 1947 and none was the equivalent of cash in that year. The petitioners received no taxable income in 1947 from receipt of the notes 8 through 30 in series ; ; . Decisions will be entered under Rule 50.